IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
EASTERN DIVISION

EUGENE SUGGS                                                                                              PLAINTIFF

V.                                                                               CIVIL ACTION NO. 1:09CV45-A-D

LOWNDES COUNTY SCHOOL DISTRICT                                                          DEFENDANT

**MEMORANDUM OPINION**

Before the Court is Defendant, Lowndes County School District's, Motion for Summary Judgment [38]. After reviewing the motion, response, rules, and authorities, the Court finds as follows:

**I. BACKGROUND**

Plaintiff, an African-American male, was terminated from his position as a middle school teacher with the Lowndes County School District after allegedly using excessive force during an altercation with one of his students. On April 28, 2008, a student in Plaintiff's Applied Technologies class apparently started playing with a Gatorade bottle and "banging" it on his desk. Plaintiff took the bottle away from the student and put it in his desk drawer. Sometime after class or towards the end of class, the student walked towards Plaintiff's desk. It is unclear as to whether the student was attempting to retrieve the Gatorade bottle or whether he was simply throwing something in the trash. However, Plaintiff contends that the student opened the desk drawer and "jerked it back" into Plaintiff's knee. Plaintiff further alleges that the student then "raised his hand in a threatening move" towards the Plaintiff.

After this altercation ensued, Plaintiff grabbed the student's left arm and put it behind his back, forcing the student towards the door. The sequence of events occurring after Plaintiff

1

grabbed the student's arm is disputed. Plaintiff asserts that while he was attempting to force the student towards the door, the student tripped and fell down. The student, however, denies making any threatening move and contends that the Plaintiff threw him down on the floor and would not let him get up.

The principal of Caledonia Middle School, Karen Pittman, learned of this altercation almost immediately. Pittman told the other students to remain in class, and she gave them each a sheet of paper, instructing each student to write down what they witnessed. Pittman also spoke with both the student and the Plaintiff. After this, Pittman notified the Superintendent of the Lowndes County School District, Mike Halford. Halford then came to Caledonia Middle School the following day. Halford spoke with each student who had witnessed the incident and reviewed each witness statement. Halford also spoke with the Plaintiff, the student, and the student's mother regarding the altercation.

Based on Pittman's recommendation and his own investigation of the incident, Halford concluded that Plaintiff's use of force was excessive and unjustified, causing Plaintiff's actions to be grounds for termination. Halford met with Plaintiff to inform him of the termination decision. Halford also provided Plaintiff with a letter setting forth the reasons for the decision and advising of the right to a due process hearing.

A due process hearing was held on June 20, 2008. Plaintiff hired an attorney to represent him at the hearing, and several witnesses were called. It is undisputed that Plaintiff had an opportunity to present a full defense and to cross examine each witness. It is also undisputed that there was a neutral hearing officer presiding over the hearing. At the conclusion of the due process hearing, the hearing officer issued a written report summarizing the testimony given at the hearing. Plaintiff received a copy of this report.

On August 1, 2008, Plaintiff and his attorney went before the school board in order to proffer Plaintiff's side of the story. After hearing the arguments made by Plaintiff and reviewing the due process hearing report, the Lowndes County School Board voted to approve the actions of Superintendent Halford. As such, on August 8, 2008, the Lowndes County School Board voted to terminate Plaintiff's employment.

Plaintiff subsequently filed a charge with the Equal Employment Opportunity Commission ("EEOC"). The EEOC issued Plaintiff a right to sue letter, and Plaintiff filed suit on February 25, 2009, asserting four separate claims: (i) racial discrimination in violation of Title VII, 42 U.S.C. § 2000e *et seq.* and 42 U.S.C. § 1981; (2) a violation of the procedural Due Process Clause of the Fourteenth Amendment; (3) a violation of the Equal Protection Clause of the Fourteenth Amendment; and (4) breach of contract in violation of Mississippi state law. On November 22, 2010, Defendant filed a Motion for Summary Judgment, arguing it is entitled to judgment as a matter of law as to all of Plaintiff's claims.

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is warranted under Rule 56(c) when evidence reveals no genuine dispute regarding any material fact, and that the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c). The party moving for summary judgment bears the initial responsibility of informing the district court of the basis for its motion and identifying those portions of the record it believes demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). The non-moving party must then go beyond the pleadings and designate "specific facts showing that there is a genuine issue for trial." Id. at 324, 106 S. Ct. 2548. Conclusory allegations, speculation, unsubstantiated assertions, and legalistic arguments are not an adequate substitute for specific

facts showing a genuine issue for trial. TIG Ins. Co. v. Sedgwick James of Wash., 276 F.3d 754, 759 (5th Cir. 2002); SEC v. Recile, 10 F.3d 1093, 1097 (5th Cir. 1997); Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc).

In reviewing the evidence, factual controversies are to be resolved in favor of the nonmovant, "but only when . . . both parties have submitted evidence of contradictory facts." Id. In the absence of proof, the court does not "assume that the nonmoving party could or would prove the necessary facts." Id.

## III. ANALYSIS AND DISCUSSION

*Title VII and Section 1981 Race Discrimination Claims*

In the Fifth Circuit, "[e]mployment discrimination claims brought under 42 U.S.C. § 1981 . . . are analyzed under the evidentiary framework applicable to claims arising under Title VII of the Civil Rights Act of 1964, as amended at 42 U.S.C. section 2000e, *et seq*." Lawrence v. Univ. of Texas Med. Branch at Galveston, 163 F.3d 309, 311 (5th Cir. 1999); LaPierre v. Benson Nissan, Inc., 86 F.3d 444, 448 n.2 (5th Cir. 1996) ("Claims of racial discrimination brought under § 1981 are governed by the same evidentiary framework applicable to claims of employment discrimination brought under Title VII."). As such, Plaintiff's Title VII and Section 1981 race discrimination claims are discussed in tandem here.

Under Title VII, it is "an unlawful employment practice for an employer . . . to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). Plaintiff alleges that his termination was improperly based on race discrimination. Plaintiff seeks to prove his case

4

circumstantially based on the standards set forth by the United States Supreme Court in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973).

Under the McDonnell Douglas standard, Plaintiff must first establish a prima facie case of discrimination by establishing that she was (1) a member of a protected group; (2) qualified for the position she held; (3) that she suffered an adverse employment decision; and (4) either replaced by someone outside the protected group or treated less favorably than employees not in the protected group. Okoye v. Univ. of Tex. Houston Health Sci. Ctr., 245 F.3d 507, 513 (5th Cir. 2001). Proof of disparate treatment can establish the fourth element of the plaintiff's prima facie case. See Bryant v. Compass Group USA Inc., 413 F.3d 471, 478 (5th Cir. 2005).

Once a plaintiff has made a prima facie case, the defendant then has the burden of producing a legitimate, nondiscriminatory motive for the adverse employment action. Parker v. State of La. Dep't of Educ. Special Sch. Dist., 323 F. App'x 321, 327 (5th Cir. 2009). The defendant's burden at this stage is merely one of production-not persuasion. Id.

If the defendant can articulate a reason that, if believed, would support a finding that the action was nondiscriminatory, then the inference of discrimination created by the plaintiff's prima facie case disappears, and the factfinder must decide the ultimate question of whether the plaintiff has proven intentional discrimination. St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 511-12, 113 S. Ct. 2742, 125 L. Ed. 2d 407 (1993). The plaintiff must present substantial evidence that the employer's proffered reason is a pretext for discrimination. Laxton v. Gap, Inc., 333 F.3d 572, 578 (5th Cir. 2003). To show pretext on summary judgment, "the plaintiff must substantiate his claim of pretext through evidence demonstrating that discrimination lay at the heart of the employer's decision." Price v. Fed. Express Corp., 283 F.3d 715, 720 (5th Cir. 2002).

5

Pretext may be established "either through evidence of disparate treatment or by showing that the employer's proffered explanation is false or 'unworthy of credence.'" Laxton, 333 F.3d at 578 (quoting Reeves, 530 U.S. at 143, 120 S. Ct. 2097). "To raise an inference of discrimination, the plaintiff may compare his treatment to that of nearly identical, similarly situated individuals." Bryant v. Compass Group USA Inc., 413 F.3d 471, 478 (5th Cir. 2005). To establish disparate treatment, however, a plaintiff must show that the employer gave preferential treatment to another employee under "nearly identical" circumstances." Id. Alternatively, "[a]n explanation is false or unworthy of credence if it is not the real reason for the adverse employment action." Laxton, 333 F.3d at 578.

In contrast, the Fifth Circuit has modified the McDonnell Douglas formulation to permit proof that discrimination was one motivating factor among others for an adverse employment action. See generally Rachid v. Jack in the Box, Inc., 376 F.3d 305 (5th Cir. 2004). At one time, the Fifth Circuit required that a plaintiff present direct evidence of discrimination in order to receive the benefit of a mixed-motive analysis. See Fierros v. Tex. Dep't of Health, 274 F.3d 187, 191 (5th Cir. 2001). However, the Supreme Court in Desert Palace, Inc. v. Costa held that Congress's failure to require a heightened burden of proof suggested that courts should not depart from the general rule of civil litigation that "requires a plaintiff to prove his case 'by a preponderance of the evidence,' using 'direct or circumstantial evidence.'" 539 U.S. 90, 99, 123 S. Ct. 2148, 156 L. Ed. 2d 84 (2003) (quoting Postal Service Bd. of Governors v. Aikens, 460 U.S. 711, 714 n. 3, 103 S. Ct. 1478, 75 L. Ed. 2d 403 (1983)). Therefore, a plaintiff asserting a Title VII discrimination claim may utilize the mixed-motive analysis whether she has presented direct or circumstantial evidence of discrimination. Id. at 101, 123 S. Ct. 2148; Smith v. Xerox Corp., 602 F.3d 320, 327-28 (5th Cir. 2010).

A. Prima Facie Case

There appears to be no dispute in this case that Plaintiff meets the first three prongs of his prima facie case: (1) he is an African American; thus, a member of a protected class under Title VII and Section 1981; (2) he was qualified for the position he held as an Applied Technologies middle school teacher; and (3) he experienced an adverse employment decision (i.e., termination). Generally, the fourth prong of the McDonnel Douglas prima facie case requires a plaintiff to show either that (i) he was replaced by someone outside the protected class or (ii) other similarly situated employees outside the protected class were treated more favorably under nearly identical circumstances. Okoye, 245 F.3d at 512-14. However, the prima facie case framework "was never intended to be rigid mechanized, or ritualistic." Furnco Constr. Corp. v. Waters, 438 U.S. 567, 577, 98 S. Ct. 2943, 57 L. Ed. 2d 957 (1978).

It is unclear whether Plaintiff was replaced by someone outside of the protected class. In Plaintiff's Complaint, it states that he was replaced by a Caucasian teacher. However, there is no concrete evidence establishing this, and Plaintiff's response to Defendant's summary judgment motion fails to even mention such an assertion. Instead, Plaintiff attempts to meet his prima facie case by showing that other similarly situated employees outside the protected class were treated more favorably. Plaintiff's response lists three individuals that he apparently deems to be Caucasian comparators: Matthew Smith, "Coach" Hester, and Superintendent Halford. Apparently, Plaintiff is attempting to show that two Caucasian teachers, Matthew Smith and Coach Hester, were allegedly not terminated due to excessive force, and that Superintendent Halford was the "Caucasian decisionmaker" in these two instances. As such, the Court focuses on whether Plaintiff can show that these individuals constitute similarly situated employees that were treated more favorably under nearly identical circumstances.

7

*Alleged Comparator: Matthew Smith*

Plaintiff first contends that Matthew Smith, who is the assistant principal at New Hope High School, constitutes a Caucasian comparator. Plaintiff's entire analysis regarding this incident is contained in one sentence: "On January 23, 2008, Matthew Smith was involved in an excessive force confrontation with a student." Plaintiff has attached a one page excerpt taken from the deposition of Smith. This deposition testimony does not mention any excessive force claim. However, Plaintiff has also attached a two page statement from Smith regarding the incident with a student. According to Smith's statement, because the student had been acting disorderly, Smith called the Lowndes County Sheriff's Department. A deputy arrived and attempted to take the student into custody. When the student resisted the arrest, Smith put the student in a headlock while the deputy placed handcuffs on the student. Plaintiff contends that this incident demonstrates disparate treatment since Smith was not terminated.

In order for Plaintiff to show disparate treatment, he "must demonstrate that the misconduct for which []he was discharged was nearly identical to that engaged in by an employee not within h[is] protected class whom the company retained." <u>Wallace v. Methodist Hosp. Sys.</u>, 271 F.3d 212, 221 (5th Cir. 2001) (citations omitted). In <u>Lee v. Kansas City South Railway. Co</u>., the Fifth Circuit explained how exacting this standard can be:

> Employees with different supervisors, who work for different divisions of a company or who were the subject of adverse employment actions too remote in time from that taken against the plaintiff generally will not be deemed similarly situated. Likewise, employees who have different work responsibilities or who are subjected to adverse employment action for dissimilar violations are not similarly situated. This is because we require that an employee who proffers a fellow employee as a comparator demonstrate that the employment actions at issue were taken "under nearly identical circumstances." The employment actions being compared will be deemed to have been taken under nearly identical circumstances when the employees being compared held the same job or responsibilities, shared the same supervisor or had their employment status determined by the same person, and have essentially comparable violation histories. And, critically, the

> plaintiff's conduct that drew the adverse employment decision must have been "nearly identical" to that of the proffered comparator who allegedly drew dissimilar employment decisions.

574 F.3d 253, 259-60 (5th Cir. 2009) (citations omitted). In this case, Plaintiff has failed to show that Smith is a similarly situated individual. Smith, as assistant principle, works in a different division of the Lowndes County School District than the Plaintiff. Smith, again as assistant principal, also has different responsibilities than Plaintiff. Further, and more importantly, the record is void of evidence as to whether Smith was disciplined for his actions or whether the "force" Smith used was even deemed excessive. Due to this, Plaintiff has failed to show that his actions were "nearly identical" to Smith's, the proffered comparator, in order to meet a prima facie case of race discrimination.

*Alleged Comparator: Coach Hester*

Plaintiff next contends that Coach Hester constitutes a similarly situated Caucasian comparator. Plaintiff has attached the deposition of Superintendent Halford in order to support this contention. The Court initially points out that the deposition from Halford is very convoluted insofar as it relates to Coach Hester. However, it appears that Coach Hester was involved in an altercation with one of his baseball players. Apparently, Coach Hester used force to remove a student from the field during a baseball game. Plaintiff asserts that Coach Hester was not terminated despite his use of excessive force. However, Coach Hester did indeed lose his coaching position. Superintendent Halford testified that he allowed Coach Hester to continue coaching while an investigation into the incident was being conducted. However, after an investigation, - and apparently due to other reasons as well – Coach Hester's contract was ultimately not renewed. Thus, Coach Hester was indeed terminated due in part to his use of excessive force with a student. As such, even if the Court found that Coach Hester was

"similarly situated" to the Plaintiff, he cannot be deemed a comparator in order to meet a prima facie case of race discrimination, as he was *not* treated more favorably than Plaintiff. Plaintiff was terminated; Coach Hester's contract to coach baseball was not renewed.

B. Legitimate, Nondiscriminatory Reason

Assuming arguendo that Plaintiff could meet his prima facie case of race discrimination, the burden would then shift to the Defendant to articulate a legitimate, nondiscriminatory reason for its employment decision. Here, Defendant asserts that Plaintiff was terminated from his position as an Applied Technologies teacher due his use of excessive force with a student. This articulated reason satisfies Defendant's burden of production.

C. Pretext / Mixed Motive

As noted above, the Fifth Circuit in Rachid v. Jack in the Box, Incorporated, set forth a new framework for pretext/mixed-motive cases at the summary judgment stage. That is, the court announced a "modified McDonnell Douglas approach" for the summary judgment framework in mixed-motive cases. 376 F.3d at 312.[1] Like McDonnell Douglas, the Fifth Circuit's mixed-motive analysis has three steps. The first two steps in this mixed-motive approach, prima facie case and legitimate, nondiscriminatory reason, are identical to the traditional McDonnell Douglas pretext analysis. However, in the final step, the Rachid court held that "the plaintiff must . . . offer sufficient evidence to create a genuine issue of material fact either (1) that the defendant's reason is not true, but is instead pretext for discrimination (pretext alternative) or (2) that the defendant's reason, while true, is only one of the reasons for its

---

[1] The "modified McDonnell Douglas" framework appears to be unique to the Fifth Circuit. That is, since Desert Palace, the circuit courts have developed widely differing approaches to the question of how to analyze summary judgment challenges in Title VII mixed-motive cases. See White v. Baxter Healthcare Corp, 533 F.3d 381, 398-99 (6th Cir. 2008) (critically evaluating how various circuits apply the mixed-motive framework).

10

conduct, and another 'motivating factor' is the plaintiff's protected characteristic." Id. (citations omitted).

In this case, Plaintiff has presented *no* evidence of either pretext or mixed motive. Plaintiff's only evidence is that Matthew Smith and Coach Hester were allegedly treated more favorably, and that Superintendent Halford – the decisionmaker – is Caucasian. As discussed above, there is no evidence that the incidents involving Matthew Smith and Coach Hester were similar to Plaintiff's situation, much less that these two individuals were treated differently under "nearly identical" circumstances. See Wallace, 271 F.3d at 221. Further, the simple fact that a Caucasian individual terminated Plaintiff's employment is not enough to establish a claim of race discrimination. If such were the case, every individual terminated by a person outside of their protected class would be able to bring a Title VII claim.

Whether summary judgment is appropriate in a Title VII case "depends on numerous factors, including 'the strength of the plaintiff's prima facie case, the probative value of the proof that the employer's explanation is false, and any other evidence that supports the employer's case and that properly may be considered.'" Price, 283 F.3d at 720 (quoting Reeves, 530 U.S. at 148-49, 120 S. Ct. 2097). Further, "[t]he plaintiff always has the . . . ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff." Warren v. City of Tupelo, 332 F. App'x 176, 180 (5th Cir. 2009) (punctuation omitted) (quoting Tex. Dep't of Comty. Affairs v. Burdine, 450 U.S. 248, 253, 101 S. Ct. 1089, 67 L. Ed. 2d 207 (1981)). Here, Plaintiff has failed to even allege that the Defendant's nondiscriminatory reason was false or unworthy of credence. Likewise, there is no evidence anywhere in the record that demonstrates racial animus was a motivating factor in Plaintiff's termination. While there may be an underlying dispute in this case regarding what exactly occurred during the altercation

between Plaintiff and the student, the School Board held a hearing to resolve this dispute and determine whether they deemed Plaintiff's use of force excessive. Importantly, there is no evidence that -- in resolving this dispute and deciding to terminate the Plaintiff -- the School Board was motivated by Plaintiff's race. In fact, every student who witnessed the altercation between Plaintiff and his student, including the African-American children, testified against the Plaintiff at his due process hearing. While Plaintiff may not agree with the School Board's ultimate resolution, the School Board's decision only runs afoul of Title VII if it was based on improper motives that the statute proscribes. "Our job as a reviewing court . . . is not to engage in second-guessing of an employer's business decision." LeMaire v. Louisiana Dep't of Transp. & Dev., 480 F.3d 383, 391 (5th Cir. 2007). As such, because the Court finds there is utterly no evidence of discrimination based on race, Defendant's Motion for Summary Judgment as to Plaintiff's Title VII and Section 1981 claims is granted.

*Equal Protection Claim*

"[T]o state a claim of racial discrimination under the Equal Protection Clause and § 1983, a plaintiff must demonstrate that the governmental official was motivated by intentional discrimination on the basis of race." Coleman v. Houston Indep. Sch. Dist., 113 F.3d 528, 533 (5th Cir. 1997) (citing Washington v. Davis, 426 U.S. 229, 240-42, 96 S. Ct. 2040, 48 L. Ed. 2d 597 (1976); Vera v. Tue, 73 F.3d 604, 609 (5th Cir. 1996)). Since the Court has already concluded that Plaintiff's unsupported allegations cannot prove a claim of race discrimination under Title VII or Section 1981, Plaintiff's Equal Protection claim must necessarily also fail. Vague and conclusory allegations of racial discrimination are insufficient to state a cognizable equal protection claim. See McKnight v. Eason, 227 F. App'x 356, 356 (5th Cir. 2007).

Accordingly, Defendant's Motion for Summary Judgment is granted as to Plaintiff's claim of racial discrimination under the Equal Protection Clause of the Fourteenth Amendment.

*Procedural Due Process Claim*

Plaintiff next asserts that the Defendant failed to afford him his rights under the procedural Due Process Clause. The Fourteenth Amendment to the United States Constitution provides, in relevant part, that no State shall "deprive any person of life, liberty or property, without due process of law." U.S. CONST. amend. XIV, § 1. The Due Process Clause has procedural and substantive components. "Substantive due process prohibits the government's abuse of power or its use for the purpose of oppression, [whereas] procedural due process prohibits arbitrary and unfair deprivations of protected life, liberty, or property interests without procedural safeguards." Howard v. Grinage, 82 F.3d 1343, 1350 (6th Cir. 1996). Here, Plaintiff only alleges that his procedural due process rights were violated.

The procedural component to the Due Process Clause refers to the procedures that the government must follow before it takes an action that could deprive a person of life, liberty, or property. See generally Goldberg v. Kelly, 397 U.S. 254, 90 S. Ct. 1011, 25 L. Ed. 2d 287 (1970). Procedural due process is based on the concept of fundamental fairness. Unlike its substantive counterpart, procedural due process limitations do not require that the government refrain from making a substantive decision to infringe upon a person's life, liberty, or property interest. Procedural due process merely requires that the government provide "due process" before making such a decision. Daniels v. Williams, 474 U.S. 327, 331, 106 S. Ct. 662, 665, 88 L. Ed. 2d 662 (1986). When the government must provide such process, it must supply certain basic safeguards such as notice of the charges or issue, see Mullhane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 70 S. Ct. 652, 94 L. Ed. 865 (1950), the opportunity for a meaningful

hearing, see Goldberg, 397 U.S. 254, 90 S. Ct. 1011, and an impartial decision maker, see Gibson v. Berryhill, 411 U.S. 564, 93 S. Ct. 1689, 36 L. Ed. 2d 488 (1973). Such procedural safeguards are the touchstone of due process.

In the present case, Plaintiff was undisputedly notified of the charges against him and was given a due process hearing. He also hired counsel and participated in such a hearing. Moreover, several witnesses were called, and Plaintiff had the opportunity to cross examine each witness. The hearing was presided over by an impartial hearing officer, and Plaintiff obtained a copy of the hearing officer's report. Plaintiff also addressed the School Board in order to explain his side of the story.

Plaintiff does not deny that he was provided with such a hearing and opportunity to respond. Instead, Plaintiff appears to make a two-fold argument as to why the Fourteenth Amendment was allegedly violated. First, Plaintiff claims that he "asserts an improper motive in the actions of the school district." Assuming Plaintiff's "improper motive" is in reference to his allegations of racial discrimination, the Court has already concluded that Plaintiff failed to prove such a claim. Further, Plaintiff does not elaborate on or provide any other evidence of an "improper motive" that would give rise to a procedural due process violation.

Second, Plaintiff asserts that his "due process rights were violated because the school district did not follow its own internal procedures." Plaintiff asserts that "[t]he precedent for other Caucasian employees indicates the determination of excessive force does not result in termination." As discussed above, Plaintiff failed to establish any type of "precedent" regarding the termination of employees for excessive force. In fact, the "precedent" shows that the school board does indeed terminate Caucasian employees for such unwarranted force. That is, Coach Hester's contract as a baseball coach was not renewed in part due to his use of excessive force.

While the Plaintiff may not agree with the outcome of the school board's decision, there is no evidence that in reaching the outcome of this decision the school board denied Plaintiff his due process rights. Thus, because Plaintiff never asserts or proves that he was not afforded a meaningful hearing and opportunity to respond, his claims under the procedural Due Process Clause of the Fourteenth Amendment fail. Accordingly, Defendant's Motion for Summary Judgment is granted as to this claim.

*Breach of Contract Claim*

In Plaintiff's Complaint, he asserts that he was "discharged during the term of his contract, and there was no 'cause' for his discharge. Thus, his termination was in breach of his teaching contract." Plaintiff fails to even allege a breach of contract claim in his response to Defendant's summary judgment motion. Even so, Plaintiff is nonetheless incapable of proving a breach of contract claim under Mississippi state law. The "cause" for his termination was the use of excessive force. Mississippi state law provides the Defendant with the right to terminate a teacher who uses violence or excessive force against a student. See MISS. CODE ANN. § 37-9-59. As such, Defendant's Motion for Summary Judgment regarding Plaintiff's breach of contract claim is granted.

## IV. CONCLUSION

For the reasons stated above, Defendant's Motion for Summary Judgment is GRANTED in its entirety.

So ordered on this, the __11th__ day of April, 2011.

**/s/   Sharion Aycock**
**UNITED STATES DISTRICT JUDGE**